



FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 JAN 15  PM 12: 09

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Scott A. Lemmon
Assistant United States Attorney
Scott.Lemmon@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4831
MAIN: 410-209-4800
FAX: 410-962-3124

December 17, 2014

Bradley L. MacFee, Sr., Esq.
1424 E. Joppa Rd.
Towson, MD 21286

      Re:    Plea Agreement in the Case of
               *United States v. Rodney Smith*, WDQ-14-183

Dear Mr. MacFee:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to Rodney Smith ("the Defendant") by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by January 15, 2015, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offenses of Conviction

      1.    The Defendant agrees to plead guilty to Counts One and Three of the Second Superseding Criminal Indictment that has been filed against him. Those Counts charge the Defendant with conspiracy to commit three Hobbs Act robberies in violation of 18 U.S.C. § 1951(a) (Count One); and using, carrying, and brandishing a firearm during and in relation to the Hobbs Act Conspiracy charged in Count One and the Hobbs Act Robbery in violation of 18 U.S.C. § 924(c) (Count Three). The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

### Elements of the Offense

      2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count 1 – 18 U.S.C. § 1951(a)

          a.    That from September 2013 to October 11, 2013, in the District of Maryland, the Defendant knowingly conspired with others to obtain or

      take the personal property of another, or from the presence of another;

  b. That the Defendant knowingly conspired with others to take the property against the victims' wills, by actual or threatened force, violence, or fear of injury, whether immediately or in the future; and

  c. That as a result of the Defendant's actions, interstate commerce, or an item moving in interstate commerce, was or would have been delayed, obstructed, or affected in any way or degree.

### Count 3 – 18 U.S.C. § 924(c)

  a. That the Defendant committed the crime of violence as charged in Count One of the Indictment, to wit, a Hobbs Act conspiracy, which is a crime for which he may be prosecuted in a court of the United States; and

  b. That the Defendant used, carried, and brandished a firearm during and in relation to the charged crime of violence.

### Penalties

3. The maximum sentences provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

  a. <u>Count 1 – 18 U.S.C. § 1951(a)</u>: 20 years imprisonment, followed by a term of supervised release of up to three years, and a fine of $250,000.

  b. <u>Count 3 – 18 U.S.C. § 924(c)</u>: Life imprisonment, with a mandatory minimum term of imprisonment of seven years, consecutive to any other sentence, followed by a term of supervised release of up to five years, and a fine of $250,000.

  c. In addition, the Defendant must pay $100 per count as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of

Bradley MacFee, Sr., Esq.
December 17, 2014
Page 4 of 11

evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551–3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

    a. Statement of Facts

<u>Count One: Hobbs Act Conspiracy</u>

From September, 2013 until October 11, 2013, in the District of Maryland and elsewhere, Rodney Smith ("the Defendant") and Derek Roberts knowingly agreed and conspired to commit armed robberies at several commercial businesses: the Burger King Restaurant located at 8304 Pulaski Highway, Rosedale, Maryland ("the Burger King Restaurant"); the Rite Aid located at 1003 Pulaski Highway, Havre de Grace, Maryland ("the Rite Aid"); and the

Exxon gas station located at 3201 Plank Road, Fredericksburg, Virginia ("the Exxon Gas Station").

The Defendant knowingly conspired with Roberts to obtain or take the personal property of the businesses from the presence of victims. The Defendant also knowingly conspired with Roberts to take the property against the victims' wills, by actual or threatened force, violence, or fear of injury. As a result of the Defendant's actions, interstate commerce, or an item moving in interstate commerce, was or would have been delayed, obstructed, or affected.

In furtherance of the conspiracy, Roberts and the Defendant entered each store, and Roberts pointed a loaded firearm at store employees. Roberts and the Defendant then stole property from each store. The Defendant knowingly participated in, and assisted Roberts with, each robbery. The Defendant and Roberts then shared the proceeds from each robbery.

### Related Conduct: Burger King Restaurant (September 15, 2013)

During the morning of September 15, 2013, in furtherance of the conspiracy set forth above, the Defendant and Roberts went to the Burger King Restaurant in Rosedale, Maryland and waited for an employee to arrive. When a male employee ("V1") arrived to open the store, Roberts and the Defendant approached him. Roberts pointed a loaded firearm at V1 and pushed him into the store. Roberts tied up V1 and demanded money from the cash register.

Roberts and the Defendant took about $200 from the Burger King Restaurant. They took the property against V1's will, by actual and threatened force, violence, and fear of injury. The Defendant received a portion of the money that was stolen.

As a result of the robbery, interstate commerce was affected. The Burger King Restaurant regularly engages in interstate commerce, including purchasing goods from out of state. The Burger King Restaurant was forced to close for a period of time while police officers gathered evidence and conducted interviews, causing it to lose income that it would have used to purchase out-of-state goods. Additionally, the robbery depleted the assets of the Burger King Restaurant, further reducing its purchases of out-of-state goods.

The Defendant, who committed the Hobbs Act Robbery directly, also aided and abetted Roberts, who committed the Hobbs Act Robbery as well.

### Count Three: 18 U.S.C. § 924(c)

On September 15, 2013, Roberts and the Defendant knowingly used, carried, and brandished the firearm during and in relation to the Hobbs Act Conspiracy charged in Count One.

Bradley MacFee, Sr., Esq.
December 17, 2014
Page 6 of 11

It was reasonably foreseeable to the Defendant that Roberts would use, carry, and brandish the firearm during and in relation to, and in furtherance of, the Hobbs Act Conspiracy charged in Count One.

### Related Conduct: Rite Aid (November 29, 2013)

Around 10:00 p.m. on September 27, 2013, in furtherance of the conspiracy set forth above, the Defendant and Roberts went to the Rite Aid Pharmacy in Havre de Grace, Maryland and waited for employees to close the store. When two female employees ("V2" and "V3") began closing the store, Roberts pointed a loaded gun at them and pushed them into the Rite Aid. Roberts and the Defendant then tied up the victims and demanded money.

One of the victims opened the store's safe, and the Defendant took money from the safe. The Defendant and Roberts took about $3,400, several cartons of cigarettes, and a purse belonging to one of the victims. The purse contained prescription medicine for the victim's husband. The Defendant and Roberts took the property against V2's and V3's will, by actual and threatened force, violence, and fear of injury. The Defendant received a portion of the stolen items.

As a result of the robbery, interstate commerce was affected. The Rite Aid Pharmacy regularly engages in interstate commerce, including purchasing goods from out of state. The robbery depleted the assets of the Rite Aid Pharmacy, reducing its purchases of out-of-state goods.

The Defendant, who committed the Hobbs Act Robbery directly, also aided and abetted Roberts, who committed the Hobbs Act Robbery as well.

### Related Conduct: Exxon Gas Station (October 3, 2013)

Around midnight on October 3, 2013, in furtherance of the conspiracy set forth above, the Defendant and Roberts drove from Maryland to the Exxon Gas Station in Fredericksburg, Virginia. A female employee ("V4") let Roberts and the Defendant into the store, and Roberts pointed a loaded gun at V4. Roberts instructed V4 to go to a back room and lay on the ground, and Roberts demanded money.

The Defendant and Roberts took approximately $200, cigarette cartons, and beer from the Exxon Gas Station. The Defendant and Roberts took the property against V4's will, by actual and threatened force, violence, and fear of injury. The Defendant received a portion of the stolen items.

As a result of the robbery, interstate commerce was affected. The Exxon Gas Station regularly engages in interstate commerce, including purchasing goods from out of state. The Exxon Gas Station was forced to close for a period of time while police officers gathered

Bradley MacFee, Sr., Esq.
December 17, 2014
Page 7 of 11

evidence and conducted interviews, causing it to lose income that it would have used to purchase out-of-state goods. Additionally, the robbery depleted the assets of the Exxon Gas Station, further reducing its purchases of out-of-state goods.

      b.    Guideline Stipulations

The parties stipulate and agree that the following base offense levels apply. (Under U.S.S.G. § 1B1.2(c), the offenses described in this plea agreement's factual stipulation "shall be treated as if the defendant had been convicted of additional counts charging those offenses.")

    Count One: Hobbs Act Conspiracy
    [Merges with the following robberies under U.S.S.G. § 3D1.2(d) and Application Note 4].

        Related Conduct: Burger King Restaurant Robbery
        20 (§ 2B3.1(a))
        + 2 (victim was restrained, § 2B3.1(b)(4)(B)) = **22**

        Related Conduct: Rite Aid Pharmacy Robbery
        20 (§ 2B3.1(a))
        + 6 (firearm was otherwise used, § 2B3.1(b)(2)(B))
        + 2 (victim was restrained, § 2B3.1(b)(4)(B)) = **28**

        Related Conduct: Exxon Gas Station Robbery
        20 (§ 2B3.1(a))
        + 6 (firearm was otherwise used, § 2B3.1(b)(2)(B))
        + 2 (victim was restrained, § 2B3.1(b)(4)(B) and *United States v. Dimache*, 665 F.3d 603, 607 (4th Cir. 2011)) = **28**

Because there are multiple counts, the combined offense level must be determined under U.S.S.G. § 3D1.4(a). The highest base offense level is **28** (Rite Aid Pharmacy robbery), and that count receives one Unit. The Exxon Gas Station robbery receives 1 Unit because it equally serious (§ 3D1.4(a)), and the Burger King Restaurant robbery receives half of a Unit because it is from 5 to 8 levels less serious (§ 3D1.4(b)). There are a total of 2.5 Units, yielding an increase of **3 levels**. As a result, for the adjusted offense level for Count One and the related conduct is **31**.

    Count Three – 18 U.S.C. § 924(c)

The parties stipulate and agree that the advisory guidelines range for Count Three is **84 months imprisonment**, consecutive to any other sentence.

c. Acceptance of Responsibility

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. Based on the foregoing, the Defendant's **adjusted offense level for Count One and the related conduct is 28**, and the advisory sentence for **Count Three is a term of imprisonment of 84 months**, consecutive to any other sentence.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender.

8. Other than as set forth above, this Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, or potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

**Obligations of the United States Attorney's Office**

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

**Restitution**

11. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. Sections 3663 and 3663A and Sections 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and

Bradley MacFee, Sr., Esq.
December 17, 2014
Page 9 of 11

to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any sentence greater than **259 months imprisonment** combined for Counts One and Three and related conduct; (ii) and this Office reserves the right to appeal any sentence less than **181 months imprisonment** combined for Counts One and Three and related conduct.

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Bradley MacFee, Sr., Esq.
December 17, 2014
Page 10 of 11

### Obstruction or Other Violations of Law

13. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

14. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Bradley MacFee, Sr., Esq.
December 17, 2014
Page 11 of 11

### Entire Agreement

15.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, along with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Scott A. Lemmon
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

1-15-15
Date

Rodney Smith

I am the Defendant's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

1.15.15
Date

Bradley MacFee, Sr., Esq.